ERVIN, Judge,
concurring and dissenting.
I concur with the majority’s opinion to the extent that it reverses the award of temporary total disability (TTD) benefits and medical benefits only through March 1995 and its extension of those benefits through June 15, 1995. I also concur in the majority’s reversal of the finding that claimant had no work-related restrictions once he achieved maximum medical improvement (MMI). The majority’s opinion does not, however, address claimant’s additional contention that he was entitled to both TTD and medical benefits until December 6, 1995. Obviously, by its approval of an MMI date of June 15, 1995, the effect of the majority’s decision is to reject claimant’s argument regarding a later time therefor. Because I cannot agree that competent, substantial evidence supports a determination that claimant was at overall MMI as of June 15, 1995, I respectfully dissent to this portion of the majority’s opinion so holding, and I would reverse and remand for additional findings as to this issue.
Claimant suffered his industrial accident on December 15, 1994, which resulted in injuries to both his lower back and neck. Immediately after the accident, claimant began treating with Dr. Juan Ibanez, a general practitioner. Claimant complained mostly of lower back problems, and Dr. Ibanez diagnosed a soft tissue injury in the lower back. Additionally, testing revealed degenerative disc disease, impingement and disc protrusion at Ll-2, degenerative disc disease from C4 to C7, bulging at C5-6, spurring at C4-5 and C5-6, a herniated disc at C6-7, and damage to medial nerve on the right arm. Because the cervical disc herniation required surgery, Dr. Ibanez referred claimant to Dr. Roberto Bellegarrigue, a neurosurgeon, for that condition, and Dr. Bellegarrigue performed an anterior cervical diskectomy and fusion at C5-6 and C6-7 in March 1995. Dr. Bellegarrigue opined that claimant was at MMI on June 15, 1995. He noted a problem with claimant’s right elbow, which he did not consider to be cervical in nature, and he released claimant back to Dr. Ibanez’s care “for what other medical problem he might have.” Dr. Ibanez continued to treat claimant after his discharge by Dr. Bellegarrigue, once on July 13, 1995, and again on October 3, 1995. During the July 18, 1995, visit, Dr. Ibanez reported that claimant’s neck was still stiff and that his back “catches” when twisted. Dr. Ibanez, moreover, testified that he had never returned claimant to work since he took him off work the date of the accident.
A claimant must, of course, reach overall MMI as to all conditions; otherwise, a finding of partial MMI is premature. See Crown Carpentry, Inc. v. Guillen, 547 So.2d 1042 (Fla. 1st DCA 1989); Martin-Marietta Corp. v. Vargas, 472 So.2d 833 (Fla. 1st DCA 1985). Indeed, an employee cannot be considered to be at MMI until no “further recovery from, or lasting improvement to, an injury or disease can ... reasonably be anticipated, based upon reasonable medical probability.” § 440.02(8), Fla. Stat. (1993).
I am of the opinion that the case must be remanded for further findings regarding why the JCC accepted Dr. Bellegarrigue’s MMI date, when it appears from the record that *310 claimant remained under the care of Dr. Ibanez after that date.[1] Although a JCC need not generally explain why he or she accepted the testimony of one doctor over that of another, an explanation is required if the reason is not apparent from the record, or if it appears that the JCC overlooked or ignored evidence in the record. See Scotty’s, Inc. v. Sarandrea, 645 So.2d 121 (Fla. 1st DCA 1994); Travelodge & Royal Ins. v. Pierre-Gilles, 625 So.2d 1280 (Fla. 1st DCA 1993). This rule is particularly applicable in regard to the establishment of an MMI date. A determination of MMI “should ordinarily be based upon a clear, explicit expression of that fact set forth in medical records or medical opinion testimony.” See Kilbourne & Sons v. Kilbourne, 677 So.2d 855, 859 (Fla. 1st DCA 1995).
It is true that Dr. Bellegarrigue testified during his deposition that when he released claimant to the care of Dr. Ibanez, he did so only for treatment of his elbow. Although Dr. Bellegarrigue observed nothing in claimant’s back which he deemed important, he admitted the existence of a sprain. Moreover, Dr. Bellegarrigue was not referred to treat claimant’s lower back, nor does the record reflect that he cared for any ailment other than claimant’s cervical condition. The last contact that Dr. Bellegarrigue had with claimant was on June 15,1995; consequently, he was in no position to judge the status of claimant’s recovery after his release of claimant from his care.
For all of the above reasons, the cause should be remanded to the JCC for further findings, as well as the taking of additional evidence, if necessary, in regard to the establishment of an overall MMI date.

. Dr. Ibanez testified during his December '6, 1995, deposition that claimant was then at MMI.